UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CATHERINE SHAWNA CHASE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C14-432-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

    Plaintiff Catherine Shawna Chase appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

                       I.     FACTS AND PROCEDURAL HISTORY

    At the time of her second administrative hearing, plaintiff was a 27 year-old woman with an 11th grade education. Administrative Record ("AR") at 77. She has no past relevant work experience. AR at 33. Plaintiff asserts that she is disabled due to asthma; obesity;

REPORT AND RECOMMENDATION - 1

fibromyalgia; depressive disorder; anxiety disorder; personality disorder and somatoform disorder.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 20. Plaintiff requested a hearing which took place on August 8, 2012. AR at 72-114. On September 25, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 20-35. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Chase bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On September 25, 2012, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since May 2, 2011, the application date.

2. The claimant has the following severe impairments: asthma; obesity; fibromyalgia; depressive disorder; anxiety disorder; and personality disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). The claimant has the mental capacity to adequately perform the mental activities generally required by competitive remunerative work as follows: The claimant can understand, remember, and carry out simple instructions required of jobs classified at a level of SVP 1 and 2, or unskilled work. The claimant can make judgments on simple work-related decisions and can respond appropriately to supervision, co-workers and deal with changes all within a stable work environment. The claimant should not deal with the general public, such as a sales or cashier position, or where the general public is frequently encountered as an essential element of the work process such as telemarketing. Incidental contact with the general public is not precluded so long as the public is not a part of the work process.

5. The claimant has no past relevant work.

6. The claimant was born on XXXXX, 1985 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 2, 2011, the date the application was filed.

AR at 22-35.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred when he failed to properly consider Plaintiff's diagnosed somatoform disorder severe at step 2, and when he failed to consider the opinion evidence of Dr. Bartlett that the impairment is "severe" and meets or equals a Listing?

2. Whether the ALJ erred when he failed to consider the impact of all of Plaintiff's severe mental impairment at steps 3?

3. Whether the ALJ erred when rejecting Dr. Bartlett's opinions of the severity of Plaintiff's mental impairments, and failed to provide specific and legitimate reasons to support his rejection?

4. Whether the ALJ erred when he failed to make a complete and accurate assessment of Plaintiff's RFC, and failed to properly consider limitations resulting from her asthma and obesity, despite purporting to find those limitations "severe"; and whether the ALJ erred in finding Plaintiff not fully credible on the basis of symptom magnification, given that he failed to properly consider Plaintiff's somatoform disorder?

5. Whether the ALJ erred at step 5 when finding Plaintiff can perform other work, given the incomplete RFC assessment and hypotheticals and incompetent Vocational Expert testimony upon which he relied?

Dkt. No. 14 at 1-2.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

## VII.  DISCUSSION

### A.  The ALJ Erred in His Evaluation of Dr. Bartlett's Opinion

#### 1.  Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.*  An ALJ may reject the controverted opinions of an examining

1   physician only by providing specific and legitimate reasons that are supported by the record.

2   *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Dr. Bartlett

In May 2010, plaintiff was evaluated by Dr. Kerry Bartlett, a psychologist.  AR at 315-21.  Dr. Bartlett relied upon a clinical interview, a mental status evaluation, the WMS-R Logical Memory & Reproduction sections, selected portions of the Woodcock-Johnson Educational subtests, and the WAIS-III as part of his evaluation process.  AR at 317.  He was of the opinion that plaintiff's effort on the evaluation tests was "the best of which she [was] currently capable."  *Id.*

> Dr. Bartlett concluded that
> Although Catherine reported numerous physical health concerns that based upon her self-report would be expected to be disabling for her, *in my opinion she is severely and chronically disabled based solely upon her psychiatric concerns.*  As noted above, she does report some functional psychiatric concerns including PTSD, but the primary impediment to employment is the Axis II characterological disorder.  Thus her ability to establish and maintain even basic rapport within this session was considered severely compromised, and it would be my expectation that she would alienate herself very quickly even within a basic interview circumstance, and most certainly within very short order on any job circumstance.  Her social judgment and perception are both

REPORT AND RECOMMENDATION - 8

   severely compromised, and due to the nature of the characterological concerns
   her overall sense of self is sufficiently insulated from reality that it is unlikely
   that therapy would result in significant improvement in the near term.

AR at 319 (emphasis added).  Dr. Bartlett diagnosed her with Impulse Control Disorder, NOS with features of ADHD; PTSD, chronic; Undifferentiated Somatoform Disorder; History of Adjustment Disorder with Depressed Mood, reported to be in remission; Mathematics Disorder; and Personality Disorder, NOS manifested as mixed Paranoid and Narcissistic characterological features.  AR at 320.  He also assigned a Global Assessment of Functioning ("GAF")[3] score or 45.

   The ALJ gave "little weight" to Dr. Bartlett's opinions, due to "internal inconsistencies" and what he believed was over-reliance on plaintiff's self-reporting.  Neither reason is legally supportable.

   First "these internal inconsistencies" relied upon by the ALJ are not readily evident from the opinion.  Indeed, the Commissioner fails to even cite any internal inconsistencies.  Second, to state that the opinions were overly reliant upon self-reports is to ignore the testing done by Dr. Bartlett, and the very nature of psychological evaluations.

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job.  *Id.*  A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood."  A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas."  *Id.*

More problematical than the ALJ's simplistic boilerplate dismissal of Dr. Bartlett's opinions is the failure to even consider Dr. Bartlett's diagnosis of undifferentiated somatoform disorder.  AR at 320.  Somatoform disorders are psychosomatic illness -- that is, physical distress of psychological origin.  20 CFR pt. 404, subpt. P, app.1, §12.07.  This is a psychiatric disorder that causes the sufferer to have a distorted perception of physical ailments.

This failure to consider Dr. Bartlett's diagnosis requires a remand.  This is a significant error that even the Commissioner does not attempt to address.  If, in fact, somatoform disorders cause a person suffering from them to "exaggerate" illnesses, which otherwise might impact the validity of "self-reports" or credibility issues, then simply ignoring the diagnosis is error on the part of the ALJ.  This obviously has impacts on the Step 2, 3, 4 and 5 inquiries.  The Court notes, tangentially, that Dr. Bartlett's opinions are remarkably consistent with the 4 evaluations from Dr. Coleman that are of record.

This matter must be remanded.  Unfortunately, the Court cannot conclude at this stage that it should not be remanded for payment of benefits, because certain issues remain unresolved.  However, the Court notes that plaintiff's claim is very old.  The Commissioner is directed to assign this case to a new ALJ with instructions to provide a complete *de novo* hearing.  The new ALJ is directed to undertake further medical evaluations, if necessary, but to otherwise expedite the hearing on this matter.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 27, 2015**.  Failure to file

REPORT AND RECOMMENDATION - 10

objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 30, 2015**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 13th day of January, 2015.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11